

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
11/04/2015

| | | |
|---|---|---|
| IN RE: | § | |
| LEONARDO  ALVARADO | § | CASE NO: 15-70491 |
| Debtor | § | |
| | § | CHAPTER  13 |

**MEMORANDUM OPINION**
**REGARDING**
**DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY**
[*Resolving ECF No.* **17**]

## I. Introduction

In the instant motion, this Court is asked to determine whether to grant Debtor's Motion To Extend the Automatic Stay.  As such, the analysis should be conducted under 11 U.S.C. § 362(c)(3) and utilizing the factors from *In re Charles*, 334 B.R. 207, 219-23 (Bankr. S.D. Tex. 2005), as previously adopted by this Court, as well as the additional factors adopted in this Court's prior opinion in *In re Acosta*, 2015 Bankr. LEXIS 3754 (Bankr. S.D. Tex. Oct. 30, 2015).

## II.  Findings Of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

### A.  The Debtor's First Bankruptcy Case

1.    On November 1, 2014, Leonardo Alvarado ("**Debtor**") filed his initial petition under chapter 13 of Title 11 of the United States Code (the "**Bankruptcy Code**" or "**Code**"),[1]

---

[1] Any reference to "*Code*" or "*Bankruptcy Code*" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

initiating case number 14-70593-M-13 and thereby invoking the automatic stay under 11 U.S.C. §362.  [Case No. 14-70593, ECF No. 1].

2.      Debtor stated that he was employed as an Area Supervisor at Ross and earned approximately $2,215.00 per month.  [ECF No. 34].  Debtor also received support from his sister in the amount of $850 per month and from his mother in the amount of $500 per month.  *Id.* at 3.  Additionally, Debtor's brother lived with him and is his dependent, but was not currently contributing to the household income as of the time of the filing.  [ECF No. 1 at 22-3 and 31].

3.      On November 14, 2014, Debtor filed his chapter 13 plan.  [ECF No. 13].  The plan called for monthly payments in the amount of $1,800.00 to the chapter 13 trustee with a 79% dividend to the general unsecured class of creditors.  [ECF No. 13 at 8].

4.      On January 22, 2015, the Court conducted a confirmation hearing wherein Debtor's plan was not confirmed by the Court.  [ECF No. 11 & 24].

5.      On April 16, 2015, the chapter 13 trustee filed her Motion To Dismiss, alleging that the Debtor was more than $4,799 in arrears with her office and that the proposed plan was not feasible.  [ECF No. 28].

6.      On April 29, 2015, Debtor filed an Amended Chapter 13 Plan.  [ECF No. 33].  The amended plan called for monthly payments of $924.20 for the first five months and then $1,660.00 for the remaining fifty-four months of the plan, which would provide 100% dividend to the general unsecured creditors.  *Id.* at 1 and 7.

7.      On June 18, 2015, the Court dismissed the case.  [ECF No. 36].

8.      There were no motions to lift the automatic stay in that case.

**B.  The Debtor's Second Bankruptcy Case (the instant chapter 13 case)**

9.      On September 30, 2015, Debtor filed the instant chapter 13 proceeding.  [Case

No. 15-70491, ECF No. 1].  Debtor filed his plan of reorganization on the same date (the "***Plan***").  [ECF No. 2].  The Plan calls for monthly payments in the amount of $1,950.00 to the chapter 13 trustee with a 39% dividend to the general unsecured class of creditors.

10.    Debtor states that he is a Supervisor at Ross earning approximately $2,633.15 per month.  [ECF No. 1 at 18].  Debtor's mother provides $520 in monthly support, but the Debtor's sister is no longer providing support as in the prior bankruptcy case.[2]  *Id.* at 19; Finding of Fact No. 2.

11.    Debtor's brother is still a dependent living with the Debtor.  [ECF No. 1 at 20].

12.    On October 5, 2015, Debtor filed a Motion To Extend The Automatic Stay, (herein "**Motion**").  [ECF No. 17].

13.    No objections to this Motion have been filed by any party in interest.

**D.  The Hearing on October 28, 2015**

14.    On October 28, 2015, this Court conducted an evidentiary hearing (the "***Hearing***") on the instant motion.  At the hearing, Debtor, Debtor's Counsel, and Counsel for SE Habitat, LLC (the "***Mortgagee***") were present, and Debtor testified as to the following:

a.  Debtor's sister no longer resides with the Debtor and is therefore no longer contributing to the Plan as she had done in the prior case.

b.  Debtor's brother and mother currently live with him.  The brother is currently in high school and will graduate in May 2016.  The brother has looked into a part-time job, but has not secured one as of the date of the Hearing.

c.  Debtor's mother would be able to continue contributing $520 per month for the duration of the Plan.  The mother has her own income and provides for her own

---

[2] In a post Hearing filing, the Debtor amended his Schedule I to no longer include any contribution from his mother. [ECF No. 29].

> expenses.

> d.  The primary purpose of the bankruptcy was to save Debtor's home.[3]

> e.  Debtor has a Wage Order in place, but Debtor's employer has not begun deducting payments yet.  As a result, Debtor has not made any payments in the instant case.  A payment was due shortly after the Hearing and Debtor testified that he could not make the payment as scheduled, due to home and automobile repairs, and that he had only approximately $200 that could be used to make a payment.

> f.  Debtor currently works thirty-seven hours per week, but is considering looking for a second job to secure additional income.

15.     Counsel for the Mortgagee stated that the mortgage on Debtor's home includes escrow for ad valorem taxes and insurance, but the current impound was insufficient for 2014 taxes.  Counsel also provided an Agreed Order on the Debtor's Motion to Extend the Automatic Stay that provided for extending the Automatic Stay to the Mortgagee.

16.     When questioned by this Court, Debtor testified regarding the expenses in the budget affected by extremely thin margins.[4]   Debtor claimed that food expenses for the household were $100 to $150 per month.  The Plan also provided for $50 in savings, [ECF No. 2 at 7], but the Debtor did not deny that any slight deviation in expenses could derail his bankruptcy.

17.     This Court found the following deficiencies in Debtor's Schedules:

---

[3] In a post Hearing amendment of the Plan, Debtor amended the Plan to show the collateral held by the Mortgagee's Secured Claim being surrendered at confirmation and providing payments for the remaining two creditors, his counsel and United Auto Credit Co.  [ECF No. 31].

[4] In a post Hearing filing, the Debtor amended his Schedule J and presented a completely different budget that included significantly higher expenses.  [ECF No. 30].

      a.   There are no provisions for home maintenance, repair, and upkeep expenses for Debtor's home.  [ECF No. 1 at 20].

      b.   Debtor did not propose a feasible plan.

18.    At the conclusion of the Hearing, this Court took the matter under advisement in order to further examine the provisions of the Plan and the schedules filed by the Debtor pursuant to the requirements of § 362(c)(3).

### III.  Legal Standard

Section 362 provides that a stay, which is applicable to all entities, is automatically applied whenever a debtor files a petition for bankruptcy, whether voluntary or involuntary.  11 U.S.C. § 362(a) (the "*Automatic Stay*").  The stay prohibits a variety of actions against the debtor or the debtor's property.  § 362(a)(1)-(8).  However, the stay is subject to certain restrictions when the debtor has had one or more cases pending within the previous year from the filing of the current petition.  *Id*. at (c)(3)(A) & (4)(A).  When a debtor has two or more cases pending within a year of filing the current petition, the Automatic Stay is not automatically in effect.  *Id.* at (c)(4)(A)(i).  However, § 362(c)(3)(A), which is applicable in the instant case, provides a different limitation on the Automatic Stay.  Section 362(c)(3)&(3)(A), when read in conjunction, states that:

> if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

§ 362(c)(3)&(3)(A).  However, within the first 30 days of filing a case, a debtor may request that a court continue the Automatic Stay beyond the 30 day grace period, but the court may only grant such relief and impose the Automatic Stay on

any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed.

§ 362(c)(3)(B); ); *see also In re Little Creek Development Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) (discussing the standard for good faith in the bankruptcy code and stating that "[d]etermining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities").   The debtor carries the burden of rebutting a presumption that the petition for bankruptcy has not been filed when § 362(c)(3)(C)(i)(I)-(III) creates such a presumption. A court, when considering a debtor's request for the continuation of the Automatic Stay, is required to evaluate the debtor's evidence rebutting such a presumption under a "clear and convincing" evidentiary standard.  § 362(c)(3)(C).  The presumption that the petition has not been filed in good faith is created, as to all creditors, when the debtor has been shown to have met any of the following:

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—

> (aa) if a case under chapter 7, with a discharge; or
>
> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed;

§ 362(c)(3)(C)(i)(I)-(III).  For creditors that have sought relief from the Automatic Stay in a previous case for the same debtor, the same presumption is maintained when, "as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor."  § 362(c)(3)(C)(ii).[5]

There are several cases in the Southern District of Texas that are instructive in analyzing the clear and convincing standard announced by the Fifth Circuit in *Shafer v. Army & Air Force Exch. Serv.*, which requires that the:

> weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

376 F.3d 386, 396 (5th Cir. 2004) (citing to *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)) (internal quotations omitted).  In *In re Charles*, the court set forth a list of factors to be used in determining whether a debtor can, or alternatively has, established that the pending case has been filed in good faith by clear and convincing evidence.  *In re Charles*, 334 B.R. 207, 219-23 (Bankr. S.D. Tex. 2005).  These so-called *Charles* factors have been adopted in other sister courts in the Southern District of Texas as recently as July of 2015, when a sister court used the factors in *In re Wright*.  533 B.R. 222, 233-34 (Bankr. S.D. Tex. 2015).  The factors to be considered are:

1) Does the creditor against whom the extension of the stay is sought agree to the

---

[5] § 362(c)(3)(C)(ii) states that "as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor."

stay extension?

2) Is it likely that the debtor will obtain a discharge in the pending case?

3) What is the nature of the debt held by the creditor?

4) What is the nature of the collateral held by the creditor?

5) Has the debtor made any purchases on the eve of bankruptcy?

6) What has been the debtor's conduct in the pending case?

7) What are the reasons why the debtor wants to extend the automatic stay?; and

8) Are there any unique facts or circumstances particular to the pending case?

*Id.* at 234.  This Court will apply these factors in order to determine whether Debtor has filed the instant case in good faith by clear and convincing evidence.

## IV.  Conclusions Of Law

**A.  Jurisdiction & Venue**

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." This is a core matter for the purpose of 11 U.S.C. § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate."  11 U.S.C. § 157.  The decision to grant or deny the extension of the Automatic Stay therein is squarely one that involves the administration of an estate. Therefore, jurisdiction is proper under the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal

assets in the United States, of the person or entity…" In his petition, Debtor alleges that he resides in Mercedes, Texas. Therefore, venue is proper.

## B. Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized bankruptcy judges to issue final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute held by Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional authority. *Id.* at 2620. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.

*Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court decide whether the automatic stay pursuant to 11 U.S.C. §362 (c)(3) should be extended, [ECF No. 10], which solely concerns federal bankruptcy law.  Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the matter at bar.

## C.  A Review of the 8 Factors to Determine Whether to Deny or Grant the Debtor's Motion

In *Charles*, the court reasoned that the first two factors amounted to a threshold test for good faith by the debtor(s).  *In re Charles*, 334 B.R. at 220-21; *see also In re Wright*, 533 B.R. at 234.  If this Court cannot find that either of the threshold factors are met, then there is no need for this Court to examine the latter factors.  *In re Collins*, 334 B.R. 646, 653 (Bankr. S.D. Tex. 2005).

The first factor looks at the response from a creditor to the debtor's motion to extend the Automatic Stay.  *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.  In the instant case, Debtor seeks to extend the Automatic Stay.  [ECF No. 17 at 1].  There have been no objections filed by any creditors as of the date of the Hearing.  However, at the Hearing, Mortgagee presented an Agreed Order to this Court to continue the Automatic Stay as to them in lieu of filing a formal objection to the Motion.  Finding of Fact No. 15.  This Court can only infer that the remaining creditors have no objection to the stay being imposed upon them due to their failure to file a formal objection prior to the deadline.  [ECF No. 17].  The remaining creditors are deemed to have agreed to the motion, so no further analysis past the second factor need be done.  § 362(c)(4)(B); *In re Collins*, 335 B.R. at 653 ("A finding that the creditor against whom the extension of the stay is sought agrees to a stay extension ends the inquiry"); *Cf. In re Charles*, 334 B.R. at 220.  Therefore, as this Court has deemed agreement by the creditors and

that no objections have been filed, the analysis weighs towards a finding that the plan has been filed in good faith.

The second factor is an objective test in the sense that it objectively analyzes the debtor's situation to determine whether the pending bankruptcy case is likely to succeed or to fail. *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34. In order to receive a discharge in a chapter 13, the debtor must confirm a plan and then perform under that plan. 11 U.S.C. § 1328. Here, Debtor filed a Plan that proposes to provide a 39% dividend to creditors. [ECF No. 2]; Finding of Fact No. 9. However, Debtor's testimony at the Hearing calls into question his ability to perform under the Plan. Finding of Fact No. 14, 15 & 16. In particular, Debtor is starting off poorly, as he testified that he will likely miss his first plan payment because he spent the funds that should have been allocated to the payment had his employer withheld the funds from his wages. Finding of Fact No. 14(e). Furthermore, Debtor's scheduled budget leaves this Court with serious concerns about the validity of the budget[6] and whether Debtor can survive any financial hardships that may occur for the duration of the Plan period. Finding of Fact No. 14, 15, 16 and 17. On a preliminary inquiry, this Court cannot conclude whether the Plan meets the requirements under 11 U.S.C. § 1325(a)(5) and thus is likely to be confirmable, due to reservations that this Court has with the Plan, the Debtor's Schedules, and the Debtor's ability to perform under the Plan as proposed. *See In re Charles*, 334 B.R. at 220-21. Therefore, this Court cannot conclude that the Debtor is likely to receive a discharge, because this Court cannot conclude that the Plan, as proposed, is confirmable due to the lack of feasibility. *See* 11 U.S.C. § 1328(a). As this Court cannot conclude that the Debtor is likely to receive a discharge, there can be no finding other than that the pending case was filed not in good faith.

---

[6] The Debtor's post-Hearing amendment to Schedule J, [ECF No. 30], validates the concerns this Court voiced at the Hearing by showing a significantly higher budget in Schedule J, as amended, than the original Schedule J.

### 2.  Subjective Analysis – Factors Specific to the Pending Bankruptcy for PFC

The subjective analysis takes into account the remaining six *Charles* factors.  *In re Charles*, 334 B.R. at 221-23.  This Court must generally analyze these factors to determine if there is good faith in the filing of the pending case "as to the creditors to be stayed."  *Id.*  However, this Court does not need to proceed to the remaining six *Charles* factors when the first two threshold factors do not weigh towards a finding that the Debtor filed the pending case in good faith.  *Id.*  As this Court has concluded that the Debtor failed to pass the burden imposed by the second of the threshold factors, there is no need to proceed with an analysis under the subjective factors from *In re Charles* or *In re Acosta*.  *In re Charles*, 334 B.R. at 219-223; *In re Acosta*, 2015 Bankr. LEXIS 3754 at *28.

### 3.  Conclusion

Based on the foregoing analysis, this Court cannot conclude that the Debtor has filed the instant case in good faith based on the threshold *Charles* factors.  As such, pursuant to § 362(c)(3)(B), Debtor has failed to carry his burden of demonstrating, by clear and convincing evidence, that he filed the instant case in good faith as to all creditors.

### V. Conclusion

Debtor filed his Motion to Extend the Automatic Stay, which requires that this Court analyze the instant motion, the conduct of the Debtor in the instant case and prior cases, and a preliminary consideration of the Debtor's other filings in the instant case.  § 362(c)(4)(B).  This Court used the factors from *In re Charles*, *In re Collins*, and *In re Wright* to help determine whether Debtor filed the pending case in good faith by "clear and convincing evidence,"[7] as previously adopted by this Court, as well as the additional factors announced by this Court in *In*

---

[7] Clear and convincing evidence was defined by the Fifth Circuit in *Shafer*, 376 F.3d at 396.

*re Acosta*. *In re Charles*, 334 B.R. at 219-223; *In re Acosta*, 2015 Bankr. LEXIS 3754 at \*28; *see also In re Wright*, 533 B.R. at 234; *In re Collins*, 334 B.R. at 652.  The first two threshold factors weighed, overall, against a finding that the Debtor had filed the instant case in good faith, as Debtor failed to provide sufficient evidence to demonstrate that the proposed Plan was feasible such that it could be fully performed and entitle Debtor to a discharge.  *Supra* Part IV.C.1.  The analysis under the six subjective *Charles* factors and the additional *Acosta* factors were unnecessary, as Debtor failed to demonstrate that he had filed the instant case in good faith under the first two threshold factors.  *Supra* Part IV.C.2; *see also In re Charles*, 334 B.R. at 221-23; *In re Acosta*, 2015 Bankr. LEXIS 3754 at \*28.  Accordingly, Debtor's Motion to Extend the Automatic Stay is **DENIED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith for Debtor's Motion.

SIGNED 11/04/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge